UNITED STATES DISTRICT COURT　　　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

    -versus-

JOSEPH SIMONE; ISLAND CAPITAL
MANAGEMENT, INC.; JOSEPH LANDO;
JOSEPH CARACCIOLO; ALFRED
VARRICCHIO; ANTHONY PIANELLI; JILL
PIANELLI; JAP JAP ENTERPRISES, LLC;
BRIAN FABRIZZI; DONALD
SORRENTINO; ANTHONY CARANNANTE,　　ORDER
individually and d/b/a A&C MANAGEMENT;　　07-cv-3928 (JG)
STEVEN DARONZIO, individually and d/b/a
A&C MANAGEMENT; ROCHELLE
ROMAN; SHAUN SARNICOLA; ANTHONY
TANICO; ANDREA LANDO-TANICO; AJT
LTD.; AJGT LTD.; MICHAEL
McCORMACK; DONNA CENTOLA; DMAC
SERVICES, INC.; ANDREW CACCIOPPOLI;
THOMAS MACLI; DONNA MACLI;
LUMAC CORP.; GARY MANFRE;
RICHARD MANFRE; and RAM
SOLUTIONS, INC.,

               Defendants.

---

A P P E A R A N C E S

    By:    Kenneth V. Byrne
            Jack Kaufman
            Burk E. Burnett
            Securities and Exchange Commission
            New York Regional Office
            3 World financial Center, Suite 400
            New York, NY 10281
            *Attorneys for Plaintiff*

    By:    Robert M. Fishler
            Gaines & Fishler, LLP
            2555 Richmond Avenue
            Staten Island, New York 10314
            *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

On November 19, 2011, Defendants Anthony Tanico, Andrea Lando-Tanico (the "Tanicos") and their entities AJT Ltd. and AJGT Ltd. ("the Entities") consented to the entry of a Judgment of Permanent Injunction and Other Relief ("partial consent judgment").[1] This partial consent judgment provided, *inter alia*, that "the Court shall determine whether to order disgorgement of ill-gotten gains and/or a civil penalty . . . and, if so, the amount(s) of disgorgement," as well as "prejudgment interest" on any disgorgement ordered. Judgment, ECF No. 70. On May 21, 2013, the Securities and Exchange Commission (the "Commission") moved for an order of disgorgement in the amount of $543,497.00, prejudgment interest on that amount,[2] and a civil money penalty against the defendants. *See* Notice of Mot., ECF No. 123. This Court held argument on July 9, 2013. On July 16, 2013, the Tanicos supplemented the record to include a financial affidavit detailing their net worth.[3] For the reasons stated below, the Commission's motion is granted in part and denied in part.

## DISCUSSION

A.   *Disgorgement*

Disgorgement is a form of equitable relief, *see SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991), and is "a method of forcing a defendant to give up the amount by which he was unjustly enriched." *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.3d 90, 102 (2d Cir. 1978). "[T]he primary purpose of disgorgement is to deter violations of the laws by depriving violators of their ill-gotten gains." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). Federal courts have authority to order equitable disgorgement in cases involving improper

---

[1] The consent judgment precludes the Tanicos from arguing that they did not violate the federal securities laws as alleged in the complaint and from challenging the validity of the consent judgment. The consent judgment provides that, for the purposes of the instant motion, the allegations of the Complaint shall be accepted as and deemed true by this Court.

[2] The Commission calculates pre-judgment interest on this amount as totaling $285,862.00 as of April 20, 2013. Commission's Mem. of Law 7, ECF No. 124.

[3] The affidavit is entitled "Personal Net Worth Statement as of June 30, 2012." ECF No. 130. Since I ordered the Tanicos to submit a *current* financial affidavit and since the affidavit details the Tanicos' financial assets up to and including June 30, 2013, I assume the "2012" date on the document is a typographical error.

acquisition of assets. *SEC v. Cavanagh*, 445 F.3d 105, 116, n.25 (2d Cir. 2006). Courts have broad discretion to grant or deny the Commission's motion for disgorgement. *See SEC v. Smath*, 277 F.Supp. 2d 186, 188 (E.D.N.Y. 2003) (citing *First Jersey*, 101 F.3d at 1474-75)).

The governing factor in setting the amount of disgorgement to be ordered is "the amount of gain received by each defendant from the fraud." *SEC v. Inorganic Recycling Corp.*, No. 99 Civ 10159 (GEL), 2002 WL 1968341, at *2 (S.D.N.Y. Aug. 23, 2002). The Commission is not required to establish with certainty the disgorgement amount. Rather, it need only establish that the amount of disgorgement is "a reasonable approximation of profits causally connected to the violation." *First Jersey*, 101 F.3d at 1475. The burden shifts to the defendant to show that the disgorgement figure is not a reasonable approximation of the ill-gotten gains. *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989). The defendants may satisfy this burden by "demonstrating that they received less than the full amount allegedly misappropriated and sought to be disgorged." *SEC v. Benson*, 657 F.Supp. 1122, 1133 (S.D.N.Y. 1987) (citation omitted). Where two or more individuals or entities collaborate in the violations of the securities laws, a court has discretion to hold them jointly and severally liable for the disgorgement of unlawfully acquired proceeds. *See First Jersey*, 101 F.3d at 1475-76; *see also SEC v. AbsoluteFuture.com*, 393 F.3d 94, 97 (2d Cir. 2004) (finding it appropriate to impose joint and several liability "for combined profits on collaborating or closely related parties").

In the present motion, the Commission argues that the Tanicos are jointly and severally liable for their collusive conduct and that $543,497 figure is a reasonable approximation of their ill-gotten gains. In response, the Tanicos argue that the disgorgement figure is not a reasonable approximation of their ill-gotten gains, as it fails to take into consider that monies received as a result of their fraudulent scheme were disbursed to brokers. Second, they argue that the Commission failed to allege that they collaborated in violation of the securities laws and simply relies on their marital relationship to establish joint and several liability.

1. *Analysis*

The Commission has met its burden of establishing that that $543,497 is a reasonable approximation of the profits connected to the defendants' securities violations.  I am not persuaded that the disgorgement amount should be reduced to account for the defendants' payments to brokers, as it is "irrelevant for disgorgement purposes how the defendant chose to dispose of the ill-gotten gains." *SEC v. Universal Express, Inc.*, 646 F.Supp.2d 552, 564 (S.D.N.Y. 2009) (internal quotation marks omitted).  Thus, I find that the defendants have failed to demonstrate that they received less than $543,497.

With respect to the question of joint and several liability, I have little difficulty concluding that the complaint alleges collusive action sufficient to impose joint and several liability on the defendants.  From April 1997 to February 2002, Mrs. Lando-Tanico was employed by Southwest Securities Inc. ("Southwest").  Am. Compl. at 9, ECF No. 5.  Immediately after leaving Southwest she began working as a "finder" through AJT.  *Id.*  On or about January 2003, she formed AJGT and continued working as a finder.  *Id.*  Mr. Tanico worked as a finder for AJT and then AJGT from 2002 to December 2004.  *Id.*  The fraudulent conduct took place from 2002 through 2004.  During part of that period, Mrs. Lando-Tanico's company did not yet exist.  In light of the cross-pollination between these two entities, this evidence of collusion is sufficient to warrant the imposition of joint and several liability.  *See SEC v. Universal Exp., Inc.*, 646 F. Supp. 2d 552 (S.D.N.Y. 2009).

Accepting the allegations in the complaint as true, as I must, and relying on affidavits and declarations submitted in support of this motion, I find the defendants jointly and severally liable for disgorgement in the amount of $543,497.

B.      *Pre-Judgment Interest*

In addition to disgorgement, the Commission seeks pre-judgment interest on the disgorgement amount.  Pre-judgment interest on disgorgement may also be awarded "in order to deprive the defendant from obtaining the benefit of what would amount to an interest free loan procured as a result of illegal activity." *SEC v. Roor*, No. 99 Civ 3372 (HB), 2004 WL 1933578,

4

at *10 (S.D.N.Y. Aug. 30, 2004) (internal quotation marks omitted). Whether to award pre-judgment interest and the rate used to calculate such interest is within this Court's broad discretion. *First Jersey*, 101 F.3d at 1476 ("The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion."). In determining whether pre-judgment interest is warranted, "a court should consider (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.*

Taking into consideration the Tanicos financial situation and their degree of cooperation with the Commission, the Commission's request for pre-judgment interest is denied. In making this decision, I take into consideration the remedial purpose of the statute and am guided by considerations of fairness and the balance of the equities.

C.   *Civil Penalties*

Since the remedy of disgorgement merely restores a defendant to the status quo ante, the securities laws afford courts the discretion to impose a civil penalty "to accomplish the goal of punishment" and to deter future securities law violations. *SEC v. Univ. Exp., Inc.*, 646 F.Supp.2d 552, 567 (S.D.N.Y. 2009). In determining whether to impose a civil penalty and the amount of the fine, the court should examine "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated future financial condition." *SEC v. Aragon Capital Mgmt., LLC*, 672 F.Supp2d 421, 447 (S.D.N.Y. 2009) (quoting *SEC v. Haligiannis*, 470 F.Supp2d 373, 386 (S.D.N.Y. 2007)).

This Court may impose a civil penalty not to exceed the greater of (1) the gross pecuniary gain to the defendants as a result of their unlawful conduct, or (2) a specified amount

per violation where the amount depends on whether the violation is "first-tier," "second-tier," or "third-tier." *See* 15 U.S.C. § 78u(d)(3)(B). The maximum penalty under the first, second and third tiers is $6,500, $60,000 and $120,000, respectively, per violation. The Commission seeks the imposition of a third-tier civil penalty. Third tier penalties are appropriate if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" that "resulted in substantial losses or created a significant risk of substantial losses." 15 U.S.C. § 78u(d)(3)(B)(iii).

While the Commission concedes that this Court may take the defendants financial situation into account, it argues that these circumstances alone cannot negate the need for a severe civil penalty. *Id.* at 8. The Tanicos have demonstrated a meaningful contrition by their prompt cooperation in the criminal investigation, providing full disclosure. Such cooperation is important to the investigation, prosecution and punishment of financial frauds of this kind, and should be rewarded. Weighing all the factors, and taking this cooperation into account, I decline to impose any civil penalties.

## CONCLUSION

I find that $543,497 is a reasonable approximation of profits causally connected to the Tanicos' violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. §77q(a) and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Therefore, judgment is awarded to the Commission and against defendants jointly and severally directing disgorgement in the sum of $543,497. The defendants are not obliged to pay prejudgment interest on this amount. Since I conclude that disgorgement alone will serve the goals of deterrence and forestall future violations, I decline to impose a civil penalty in addition to disgorgement.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 19, 2013
      Brooklyn, New York